UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PAUL CZUPRYN, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | ) CAUSE NO. 2:07-cv-350-WTL-WGH |
| | ) |
| KEVIN D. BURKE, et al., | ) |
| | ) |
|   Defendants. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' motion for summary judgment. The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in

search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## Relevant Facts

Plaintiff Paul Czupryn applied for the position of patrolmen with the Terre Haute Police Department ("THPD") and was placed on the list of persons eligible to be hired for that position. Before a position became open for him on the THPD, Czupryn received an appointment to the Indiana State Police. However, Czupryn left the Indiana State Policy Recruit Academy ("the Academy") after attending only one day of orientation. On the Voluntary Resignation Form he completed when leaving the Academy, Czupryn reported that he was resigning because he was uncomfortable with the extent of the paramilitary regimentation of the Academy and he wanted to return to his family's business.

Defendant Terre Haute Police Merit Commission ("the Commission") was responsible for the hiring of members of the THPD. When the Commission learned of Czupryn's resignation from the Academy and the reasons he gave for it, it asked him to attend its regular meeting on August 15, 2007, to discuss his application with the THPD. During that meeting, Czupryn gave different reasons for his resignation from the Academy than he had given on his Voluntary Resignation Form. Czupryn also told the Commission that he wished to work for the THPD so that he could be a "hero" and have the opportunity to make "aggressive arrests." In light of these answers, the Commission decided to hold an executive session to conduct a supplemental interview with Czupryn regarding his application to become an officer with the THPD.

The executive session was scheduled for October 17, 2007. Notice of the session was mailed to the appropriate media outlets and also was posted on the public bulletin board on the

first floor of the Terre Haute City Hall on September 21, 2007.  Notice was also mailed to Czupryn and his attorney.  During the executive session, Czupryn explained that the reasons he gave on the Voluntary Resignation Form were not the real (or at least not the only) reasons that he had resigned from the Academy, but that he viewed the form as a "survey" to which no duty of truthfulness attached, rather than as an official report of some kind.  He further explained that he had quit the Academy because he believed he would be happier working for the THPD and he believed that a position was going to open up soon, but that he did not say that during his exit interview at the Academy because he did not think it would be well received by the officer conducting the interview.  He also addressed the Commission's concerns about his "hero" and "aggressive arrests" comments, explaining that he meant that he felt he would have more opportunities to make a difference in the community and get criminals off the street as a THPD officer than as a state trooper.  Immediately following the executive session, the Commission held its regularly scheduled meeting, during which it voted unanimously to remove Czupryn from the THPD hiring list.

## Discussion

Czupryn alleges in this case that the decision by the Commission to remove him from the hiring list was motivated by the fact that his brother Jason, who was Terre Haute police officer, supported a particular mayoral candidate in an upcoming primary election instead of supporting the current mayor and, by extension, the current police chief.  Czupryn asserts that the Commission's actions violated his constitutional rights.  He also asserts that the October 17, 2007, executive session of the Commission was held in violation of the Indiana Open Door Law, Ind. Code 5-14-1.5 et seq.

The latter claim is easily disposed of.  Czupryn's Open Door Law claim is based upon his

assertion that notice of the executive session should have been posted in the building which houses the THPD instead of in the City Hall building.  However, Indiana Code 5-14-1.5-5(b) requires that public notices be posted "at the principal office of the public agency holding the meeting," and the Defendants have submitted an affidavit which states unequivocally that the principal office of the Commission is in the Terre Haute City Hall.  Czupryn's only response is that he believes that notice should have been posted at the THPD headquarters, which is in a different building, because that is where it would have been seen by the police officers who would be interested in the Commission's activities.  The Commission was under no legal obligation to post notice at the THPD headquarters, however, and the evidence of record establishes that it fully complied with the notice provisions of the Indiana Open Door Law.  The Defendants therefore are entitled to summary judgment on that claim.

With regard to his federal claim, Czupryn does not identify in his complaint the particular constitutional right(s) he believes the Commission violated.  The Defendants also do not expressly identify the constitutional amendment(s) upon which they believe Czupryn's claim is based.  Rather, the Defendants simply argue that Czupryn's claims must be rejected for the same reason the plaintiff's claims in *Moore v. Muncie Police & Fire Merit Comm.*, 312 F.3d 322 (7th Cir. 2002), were unsuccessful.  *Moore* involved a procedural due process claim under the Fourteenth Amendment; the plaintiff asserted that he had been deprived of a constitutionally protected property interest without due process of law when he was removed from the Muncie Fire Department's hiring list because of his age.  As the Defendants correctly note, the court held in *Moore* that there is no constitutionally protected property interest in prospective employment, even when, as here, the applicant has been placed on an eligibility or ranking list. *Id.* at 326-27.  Therefore, the Court agrees with the Defendants that Czupryn had no constitutionally protected

property interest in obtaining a job with the THPD and therefore his due process rights were not violated by the Commission's[1] actions.

In addition to arguing (incorrectly) that he had a property interest in prospective employment with the THPD, Czupryn also notes that "a liberty interest is recognized where a person is accused of conduct which may affect his calling or ability to be employed in his chosen field." Czupryn Response at 5. His liberty interest[2] was implicated, he argues, because the Commission removed him from the hiring list "based upon [the] contention that he falsified State Police documents and committed perjury." *Id.* Czupryn has misstated the standard for the claim he is attempting to make, however.

> [I]t is well-established that mere defamation, while it may be the basis for a solid claim based on state law, does not deprive a person of liberty protected by the Fourteenth Amendment. This is true even when the defamation causes serious impairment of future employment opportunities. To find a violation of a constitutionally protected liberty interest in a situation where the state actor is the employer, a plaintiff-employee would have to show that the defendants called into question his "good name, reputation, honor or integrity" in a way that made it "virtually impossible for the employee to find new employment in his chosen field."

*McMahon v. Kindlarski*, 512 F.3d 983, 988 (7th Cir. 2008) (citations omitted). [I]n order to demonstrate a violation of his liberty interest, a plaintiff must "show that he suffered a tangible loss of other employment opportunities"; "[w]hen a plaintiff cannot make such a showing, his

---

[1] In addition to the Commission and the three individual members of the Commission, Czupryn also has named as defendants Kevin Burke, who was the mayor in 2007, and George Ralston, who was the chief of police. Both Burke and Ralston are named individually and in their official capacities. However, the complaint does not allege any action by either Burke or Ralston, and Czupryn does not identify any such action in his response to the instant motion. Rather, only the action of the Commission (via the three Commissioners) is at issue in this case.

[2] A liberty interest claim may be made by a plaintiff who did not have a property interest in the government job at issue. *Townsend v. Vallas,* 256 F.3d 661, 669 (7th Cir. 2001).

liberty interest claim must fail" because it is too speculative. *Townsend v. Vallas*, 256 F.3d 661, 671 (7th 2001). In this case, Czupryn has presented no evidence at all that suggests that he is unable to obtain work as a law enforcement officer outside of the THPD. Therefore, even assuming that Czupryn could satisfy all of the other requirements for a deprivation of liberty claim, his claim must fail because he has not demonstrated that the Commission's actions resulted in him losing other employment opportunities.

Finally, Czupryn argues that his First Amendment rights were violated by the Commissioner's actions because they were motivated by his brother's political views which were at odds with the mayor and the chief of police.[3]

> It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policymaking positions and for employees having a confidential relationship with a superior. To make out a prima facie case for this type of employment discrimination, a plaintiff must show two things: first, that the plaintiff's conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision. It is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers or the successful applicant. If a plaintiff can make the prima facie showing, the burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision.

*Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (citations omitted). The Court will assume, without deciding, that Czupryn could bring a First Amendment claim based upon retaliation for the political views of his brother, rather than his own political views. Even so assuming, Czupryn has failed to establish a prima facie case because he has presented no evidence at all that the decisionmakers in this case–Defendants George Hines, Frank Hoffman and Mike Baker,

---

[3]Like the deprivation of liberty claim, this claim is not dependent on the plaintiff having a property interest in the position in question. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 72 (1990).

who were the members of the Commission–were even aware of, let alone motivated by Jason's views on the upcoming election or his opposition to the mayor and the chief of police. Czupryn implies that the Commissioners acted at the direction of the mayor and the police chief, but presents absolutely no evidence to refute the affidavit of George Hines which states unequivocally that neither man played any role in the decision to remove Czupryn from the hiring list. Czupryn and his brother both testified that they believed that the Commissioners actions were politically motivated, but both conceded that they had no evidence to support their beliefs. "[I]t is well-settled that speculation may not be used to manufacture a genuine issue of fact," and "when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts–no proof–to support his claims, summary judgment in favor of the defendant is proper." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

## Conclusion

For the reasons set forth above, the Defendants are entitled to summary judgment on all of Czupryn's claims against them. Accordingly, the motion for summary judgment is **GRANTED**.

SO ORDERED:  04/09/2009

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

William W. Drummy
WILKINSON GOELLER MODESITT
WILKINSON & DRUMMY
wwdrummy@wilkinsonlaw.com

Eric A. Frey
FREY LAW FIRM
freylaw@aol.com

Mark Douglas Hassler
HUNT HASSLER & LORENZ, LLP
hassler@huntlawfirm.net